Mr. Chief Justice Cartter
delivered the opinion of the court.
It is admitted on the part of the United States that this property was honestly bought and paid for by the defendant, Mrs. Houghton, and that after the purchase she took -possession and resided upon the property. The deed of conveyance, however, through some oversight of her agent, was not recorded until the week following the attachment laid upon the property by the plaintiff. It is, therefore, insisted that this neglect to record the deed, affords priority to the attaching creditor, and that the relative rights of the parties are not affected by the fact that the deed was executed, acknowledged and delivered, and possession of the property taken, prior to the levying of the attachment.
In support of this assumption, the plaintiff cites the act; of Congress, April-29,1878, which reads as follows.:, • ,
*416 “All deeds, deeds of trust, mortgages, conveyances, covenants, agreements, or any other instrument of writing, which by law is entitled to be -recorded in the office of the recorder of deeds, shall take effect and be valid as to creditors, and as to subsequent purchasers for valuable consideration without notice, from the time of the receipt of the deed for record.”
We do not think that this statute applies to such a case as this. Mrs. Houghton, at the time of the levying of this attachment, and the commencement of suit against the defendant Howgate, had bought this property from him, and paid him for it. And in pursuance of the purchase, had taken possession, and was living upon the property, which latter fact was notice to his creditors and to all the world. She had an equity perfect and complete, therefore, in this property, that- could be enforced against Howgate and the court would declare that he had no title to it. The entire equity has passed out of him and is in Mrs. Houghton aud the plaintiff is only entitled under the law regulating attachment proceedings to attach and levy upon the property of Howgate and not upon the property of some one else. The attachment is therefore quashed.
Mr. Justice Cox
said :
I do not regret the conclusion announced by the court in this case, because of the obvious hardship in depriving this lady of the property after, she has paid for it. But I have some difficulty in concurring in the law just announced. I have no doubt, if I sell my real estate, and receive the purchase money for it, I pass all my beneficial interest, and a judgment creditor of mine cannot levy upon it as my property. A number of cases have been cited in support of that position ; but none of them turn upon the effect of statutes, such as we have here. It seems to me, the object of this statute is to meet that very state of things, and protect creditors from appearances of title which are not real. Our Btatute is very comprehensive. We had first, the old act of assembly, of Maryland, 1766, which declared that no estate *417 above seven years may pass, except by deed acknowledged and recorded within six months, &c. Then our act of Congress provided that all agreements and instruments of writing, all bonds, &c., should be acknowledged and recorded ; and in the act as, now amended, it says that “ all deeds, ■deeds of trust, mortgages, conveyances, covenants, agreements or any other instrument of writing, which, by law, is entitled to be recorded in the office of the Recorder of Deeds, shall take effect and be valid,” &c., only from the time the same are recorded: In other words, it substantially enacts, -that no instrument of any description or form, shall, take effect and be valid as to creditors and subsequent purchasers, for valuable consideration, without notice, except from the time of record.
In a number of cases which were cited in argument, it has been held that under statutes similar to this, an unrecorded, deed is postponed to a judgment creditor; and if a judgment •creditor could levy upon property which had b.een conveyed by an unrecorded deed in this way, I take it that a creditor may levy an attachment, because the attachment would give him a lien, and the judgment when recovered would relate back to the date of the attachment and have the same effect as if the judgment had been rendered at the time of the attachment; so that it seems to me the general object of. these recording acts, is to enable both creditors and subsequent purchasers for value without notice, to deal with the title as it appears on the record — to treat the appearance as the reality of the title. That may operate with great hardship in some cases, as I admit it would in this case if the law was enforced.
It has been urged in argument, and the view seems to be entertained by the coui’t, that the only effect of this law is to make the deed, the muniment of title, void, but to leave the parties as if no deed were passed to give effect to the verbal negotiation for the sale which preceded the deed. All deeds are supposed to be preceded by a verbal negotiation arid contract out of which they grow. But it seems to me that if the mere deed is to be void, as against purchasers and *418 creditors, and the antecedent negotiation not void, the statute is deprived of all virtue whatever ; the object of the statute is defeated. Evidently the object of the statute isr that when a deed is not recorded, the status remains the same as if no agreement existed between the parties.
Some stress was laid on the fact of change of possession as notice to creditors. I do not believe there was any actual' notice to judgment creditors before the levy, but there was a change of possession, and we all know that possession is constructive notice to the purchaser of the rights of the-party in possession. But I do not think that figures in the-question between a creditor and debtor. A purchaser is supposed to inspect the property before he buys it, and if he see it adversely occupied he is put on inquiry. But the-creditor does not necessarily see the property at all. Hé takes it from the land records, and 'gives it to the marshal with directions to levy on the property, and the marshal goes there and proceeds to levy. He is not supposed to know who is in possession, and if the fact is brought to his notice, it is no notice to the creditor, for the marshal is not his-agent, but the agent of the law. Possession is not, therefore, constructive notice to him, in my judgment; and, in fact, under our statute, that question does not figure at all as respects creditors. In- six cases quoted in the argument it has been explicitly decided that the question of notice is immaterial ; that the creditor may levy upon any property the legal title in which he finds in his debtor, although he may know there has been an equitable transfer of it. These-are the reasons why I find it difficult to concur in the conclusions of the court, while I am very'glad that the court has reached that conclusion in this particular case.
Mr. Justice Hagner
said :
I agree that this question does involve, in one view, very-great difficulties ; but I am. clearly of the opinion that the judgment announced by the Chief Justice is correct. It seems to me, the strength of the defendant’s position lies in the peculiar character of the proceedings in attachment. Ordinarily when a man institutes a suit against another, it *419 matters not how meritorious his case may be, as long as the suit is being litigated he cannot put his hand on a single dollars’ worth of the defendant’s property. But if an exceptional condition of things is brought to the attention of the court, as, for instance, that the defendant is making away with his property, or has absconded, or done any of the things named in the statute providing for attachment, then this common law immunity is destroyed, and the officer of the law, on proper affidavit made by the creditor, and proper bond to indemnify the defendant from any harm he may sustain by reason of the attachment, can seize the defendant’s-property and hold it until the judgment is rendered. But suppose the marshal, in levying the attachment, takes the property of another person who owes the plaintiff nothing. Because the defendant once owned the property, and still continues to hold the legal title, should the present owner be taken through the courts, and be subjected to all this litigation, and his property in the meantime be held under the attachment, to await the inquiry whether the defendant owes money to the plaintiff? It seems to me the court ought to intervene, in a case involving such hardship; for there is no indemnity secured to the real owner of the property for the inconvenience and loss sustained in holding his-property during a litigation which may last for years. The bond is to protect the defendant in the suit, and not a stranger whose property has been wrongfully attached. After the purchase money had been fully paid, Howgate could have no interest in the land attached, except the dry legal title, a scintilla juris, which he would have held in trust for the purchaser. And such an interest not being a beneficial one, in my opinion was not the subject of an attachment. Such was the decision in Newland vs. Houston, 7 Gill & John., 480. In that case a resident of Delaware had sold his lands in Maryland, received part of the purchase money, and given the vendee a bond of conveyance. An attachment was laid upon- the lands as the property of the vendor, in whose name the record title still stood. The court held that this was but a dry legal title in the defendant; that it was not the inten *420 tion of the law to ignore the rights of the real owner of the property ; and that the statute allowed an attachment to be levied only on the property of the defendant, and not on the pi’operty of others. And they held that it was not such a case as came within the attachment laws.
These are my reasons for concurring in the conclusion of the court, which I believe is by no means at variance with ■the previous decisions of this court.